## A97A2477. MORROW v. THE STATE.
### (495 SE2d 609)

BEASLEY, Judge.

After a bomb was found in the crawl space under his ex-wife's home in 1995, Willard Anthony Morrow was convicted of criminal attempt of arson in the first degree (OCGA §§ 16-7-60 and 16-4-1), criminal possession of explosives (OCGA § 16-7-63, repealed as of

May 1, 1996, Ga. L. 1996, p. 416, § 2), and criminal possession of an explosive device (OCGA § 16-7-64, also repealed). The issues are whether the trial court erred in (i) not granting a new trial on the grounds the verdict was decidedly against the weight of the evidence, (ii) admitting evidence of prior difficulties between Morrow and his ex-wife, and (iii) permitting the testimony of the fire chief, who was not formally tendered as an expert, about the incendiary nature of the substances used in the bomb and its potential effects.

1. Whether to grant a new trial based on the weight of the evidence rests solely within the trial court's discretion. See OCGA § 5-5-21; *Willis v. State*, 263 Ga. 597, 598 (1) (436 SE2d 204) (1993); *Madaris v. State*, 207 Ga. App. 145, 147 (2) (427 SE2d 110) (1993). The appellate courts review only the sufficiency of the evidence, in the light most favorable to the verdict, to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Willis*, supra, 263 Ga. at 598; *Madaris*, supra, 207 Ga. App. at 147. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), enunciates the standard.

The evidence showed that Morrow and his wife were divorced following two episodes of violent behavior by him toward her in February 1995. She received the marital home in the property settlement over Morrow's objection. He threatened to burn the house and stated that if he did not get it, no one would.

Early on the morning of April 20, 1995, the ex-wife smelled natural gas fumes when she arrived home from her nightshift job. She had turned off the gas to the entire house some days earlier. She contacted emergency services, and firemen soon arrived. They found someone had turned the gas back on and then, using a pipe wrench, had disconnected the gas pipe from the furnace so that it was spewing gas freely into the crawl space under the house. They also discovered an open five-gallon bucket in which two propane cylinders and a bag of chlorine sat in over two gallons of gasoline.

On a piece of wood straddling the top of the bucket was a glass jar containing a small metal lid on wet expanding white particles. Stripped wires attached to the top of the jar were connected to a live electrical outlet. Black gunpowder was in the torn bottom half of a plastic ziplock bag next to the jar. If the white particles had absorbed enough liquid to raise the metal lid to the bare wires, an electrical arc would have occurred, igniting the gasoline and natural gas fumes and causing an explosion and a fire that would have destroyed the house and damaged nearby residences. The bomb was disarmed and removed.

Police found in Morrow's vehicle the matching top half of the ziplock bag, a pipe wrench, wiring tools, chlorine, white particles consistent with those found in the jar, and black gunpowder particles of

the same size and make as those from the bomb site. Early that morning Morrow, in an apparent attempt to establish an alibi, had checked himself into a hospital claiming chest pains, but the treating physician found no evidence of such.

There was ample evidence from which a jury could find guilt beyond a reasonable doubt.

2. The State complied with the procedural requirements of Uniform Superior Court Rule 31.3 by giving Morrow written notice before trial of its intent to introduce evidence of prior difficulties between Morrow and his ex-wife, including his threat to burn the house and his recent altercations with her. *Barrett v. State*, 263 Ga. 533 (2), 534-535 (436 SE2d 480) (1993). Morrow contends that the prior difficulties were not similar to arson and were so prejudicial as to outweigh their probative value.

(a) Prior difficulties are admissible if they are similar to the crime charged *or* if they have a sufficient logical connection to the crime. *Giles v. State*, 211 Ga. App. 594, 596 (2) (440 SE2d 48) (1993); *Bohannon v. State*, 208 Ga. App. 576, 580 (2) (b) (431 SE2d 149) (1993). "[T]he true test of admissibility is not the number of similarities between the crimes, but whether the evidence of prior incidents was substantially relevant for some purpose other than to show that the defendant likely committed the crime because he is a person of bad character. [Cit.]" Id.

The reasoning of *Sloan v. State*, 214 Ga. App. 784 (449 SE2d 328) (1994), applies here: "Our courts have long held that evidence of prior difficulties between an accused and the victim is relevant to show the bent of mind, motive, intent, and course of conduct of the accused toward the victim. . . . [D]efendant's previous difficulties with the victim and his family were admitted properly to show defendant's bent of mind toward them. These difficulties were connected logically to the crime on trial." (Citations and punctuation omitted.) Id. at 785 (1); see *Simmons v. State*, 266 Ga. 223, 225 (2) (b) (466 SE2d 205) (1996) (trial for murder of ex-wife; "testimony admitted concerning instances of prior difficulties throughout [defendant's] marriage was relevant to the issues of intent, motive, scheme, and bent of mind").

The court found the prior troubles between Morrow and his ex-wife tended to show the state of feeling between them and to show motive for the attempted arson. This finding of nexus was not clearly erroneous, as Morrow's prior behavior in their disintegrated relationship tended to prove a prompt for the criminal acts and explain why Morrow would commit such acts. See *Henderson v. State*, 204 Ga. App. 884, 887 (2) (420 SE2d 813) (1992) (trial court's findings on prior transactions subject to clearly erroneous standard).

(b) Because the prior troubles were logically connected to the attempted arson and relevant to an issue, "[w]e agree . . . with the

implicit finding of the trial court that the probative value of the contested evidence outweighed its prejudicial impact." *Sheppard v. State*, 267 Ga. 276, 280 (4) (476 SE2d 760) (1996). "Although evidence of prior difficulties should be received with care and should not be admitted at all if there is no probative connection with the present case, where the evidence sheds light on the defendant's conduct toward the victim, its relevance outweighs its prejudicial effect." (Citations and punctuation omitted.) *Goss v. State*, 188 Ga. App. 20, 21 (372 SE2d 5) (1988).

3. As to Fire Chief Hodges' testimony about how the construction of the apparatus rendered it an explosive device and about the damage the device would have inflicted, Morrow contends (a) Hodges was not tendered and approved as an expert witness, and (b) he was not qualified to be an expert witness on explosive devices.

(a) Although much preferred for the sake of clarity and certainty and to preclude question, it is not required that an expert be formally tendered. *Lindley v. State*, 225 Ga. App. 338, 340-341 (1) (484 SE2d 33) (1997); *Bacon v. State*, 225 Ga. App. 326, 328-329 (483 SE2d 894) (1997); see *Henry v. State*, 265 Ga. 732, 736 (5) (462 SE2d 737) (1995); *Maddox v. State*, 227 Ga. App. 602, 603 (1) (490 SE2d 174) (1997). Like the defendants in *Henry v. State*, 265 Ga. at 736, and *Bacon v. State*, 225 Ga. App. at 328, Morrow was afforded an opportunity to challenge Hodges' credentials and to cross-examine him about his testimony. The lack of a tender was not fatal, for his qualifications to testify as an expert in explosive devices was set out in the record. Id. at 330-331 (Beasley, J., concurring specially).

Contrary to Morrow's contention, the court did approve Hodges as an expert witness. When the State asked Hodges whether the apparatus could potentially explode, Morrow objected on the grounds Hodges was not qualified as an expert and challenged his experience as inadequate. The court overruled the objection. Similarly, when the State asked him to opine on what role the chlorine would serve in the apparatus, Morrow objected on the same ground, which was again overruled. Such rulings of the court "implicitly constituted its acceptance of [Hodges'] expert qualifications." *Lindley*, supra, 225 Ga. App. at 341; see *Stewart v. State*, 246 Ga. 70, 75 (4) (a) (268 SE2d 906) (1980) (by overruling such objections the court "in effect accepted [the witness] as an expert").

(b) Hodges was competent to testify as an expert witness in explosive devices. "To qualify as an expert generally all that is required is that a person must have been educated in a particular skill or profession: his special knowledge may be derived from experience as well as study. It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular area to be deemed an expert." (Citations and punctua-

tion omitted.) *Bacon*, supra, 225 Ga. App. at 329; see *Jones v. State*, 198 Ga. App. 303, 306 (3) (401 SE2d 322) (1991).

Hodges had attended arson schools and had also received specific training on explosive devices. Having fought fires for over twenty years in various capacities, from firefighter to fire chief, he had experiences with gasoline fires and explosives, including four bombs. Even though Hodges did not consider his experience extensive and in fact did not consider himself an explosives expert, similar expressions of doubt in *Askew v. State*, 185 Ga. App. 282 (363 SE2d 844) (1987), did not render the witness unqualified. " 'The question of whether or not a witness is entitled to be designated as an expert addresses itself to the sound discretion of the trial court. The doubt as expressed by the witness did not denigrate [his] credentials.' " (Citations omitted.) Id. at 282 (1).

Even if the court had erred in accepting Hodges as an expert witness in explosive devices, the error was harmless. Hodges' testimony as to the explosive nature of the gasoline, the ignition of the substances in the bomb, the role of the chlorine, and the potential damage was all confirmed by other explosives experts whose qualifications Morrow did not and does not question.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED JANUARY 9, 1998.

*Neel & Smith, Barry S. Haney*, for appellant.
*T. Joseph Campbell, District Attorney*, for appellee.