**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**May 24, 2013**

# In the Court of Appeals of Georgia

A13A0798. GRAVES v. THE STATE.

MILLER, Judge.

Following a jury trial, Rico Antwan Graves was convicted of aggravated assault (OCGA § 16-5-21 (a) (2)). Graves filed a motion for new trial, which the trial court denied. On appeal, Graves contends that the trial court improperly commented on the evidence, and that he received ineffective assistance of counsel. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the trial evidence shows that Graves and the victim had been friends. In early 2009, Graves and the victim had a falling out, and the victim told Graves that he no longer wanted to hang out with him.

---

[1] See *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

Graves would call the victim thereafter, and the victim refused to answer Graves's telephone calls. At one point, Graves went to the victim's house, and the victim told Graves not to visit him without his permission. Graves continued to show up, uninvited, at the victim's house, which caused verbal arguments between the two men that escalated over time. At one point, Graves told the victim to watch his back.

Shortly thereafter, in April 2009, the victim was watching television around 2:00 a.m. while his girlfriend was asleep in the same room. The victim heard a loud noise at the front door, as though it were being kicked-in. The victim remained seated because he did not know what to make of the noise. When he heard the loud noise again, he walked toward the locked door. Before he reached the door, the door was forced open, and Graves was standing in the doorway. The victim asked Graves what he was doing, and Graves took off running without responding. Another individual, armed with a shotgun, then stepped out in front of the victim and shot him in the right shoulder. The victim had never seen the shooter before the incident and was unable to identify him. The shooter fled the scene, and the victim and his girlfriend called 911.

The responding officer observed a puddle of blood near the doorway and saw that the door to the victim's residence had been kicked in. The officer secured the

area, and during a search for evidence, a detective collected a 12-gauge Winchester shell casing that was located near the front door. Detectives subsequently interviewed the victim at the hospital and again after he was released. The victim recounted what happened to him and provided information to the detectives that led to Graves's arrest. Detectives learned that Graves had purchased a 12-gauge shotgun in January 2009, and Graves claimed that the shotgun had been stolen. Police officers subsequently recovered Graves's shotgun from a pawn shop. Forensic evidence established that the spent casing found at the crime scene was fired from Graves's shotgun.

1. Graves contends that the trial court improperly commented on the evidence when it gave the jury a limiting instruction on what evidence the jury could consider from a detective's testimony regarding his interview of Graves's girlfriend. We discern no error.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held . . . to be error and the decision in the case reversed, and a new trial granted in the court below[.]" OCGA § 17-8-57. However, to constitute

3

an improper comment under OCGA § 17-8-57, "the trial court's statement must express an opinion about whether the evidence has proven a material issue in the case, whether a witness was credible, or whether the defendant was guilty." (Citation and punctuation omitted.) *Artis v. State*, 299 Ga. App. 287, 290 (2) (682 SE2d 375) (2009).

At trial, one of the detectives testified that during his investigation of the crime, he spoke to Graves's girlfriend. The detective stated that the girlfriend had indicated that Graves owned a shotgun and that the shotgun had been reported as having been stolen. Graves did not initially object to this testimony on hearsay grounds, but interposed such an objection when the State asked the detective whether the girlfriend had reported the gun as having been stolen from Graves's residence. Thereafter, Graves elicited additional testimony about the girlfriend's statement during cross-examination of the detective. On redirect, the State asked the detective whether he took a written statement from the girlfriend, and the detective responded in the affirmative. During re-cross, Graves asked the detective whether Graves's girlfriend ever told the detective that one of Graves's roommates used the shotgun to shoot the victim. The State objected on hearsay grounds, and the trial court sustained the objection. Following the detective's testimony, the trial court informed the parties

4

that it allowed the detective to testify about the girlfriend's statement only to the extent that she had told officers the shotgun had been stolen, and it only allowed this testimony because it pertained to Graves's defense. The trial court subsequently instructed the jury that the detective's testimony with respect to the girlfriend's statement was hearsay and was not to be considered with one exception–it could consider the detective's testimony about obtaining a statement from the girlfriend about the shotgun allegedly being stolen.

To the extent Graves challenges the trial court's admission of the hearsay statements from his girlfriend, he did not make a contemporaneous hearsay objection at the time the testimony was introduced. Consequently, he has waived the hearsay objection on appeal. See *Watson v. State*, 278 Ga. 763, 767 (2) (b) (604 SE2d 804) (2004); see also *Wood v. State*, 304 Ga. App. 52, 52-53 (2) (695 SE2d 391) (2010).

Graves argues that the trial court violated OCGA § 17-8-57 when it instructed the jury that it may consider only a portion of the detective's testimony regarding the girlfriend's statement. Contrary to Graves's argument, the trial court did not instruct the jury to conclude, as a matter of fact, that his girlfriend made a statement to police or that she informed police about the gun being stolen. Rather, the trial court instructed the jury that it could consider only a limited portion of the detective's

5

testimony regarding the girlfriend's statement. The trial judge's instructions did not

express or intimate its opinion with regard to the defendant's guilt or innocence or

make a statement with respect to what had been proven. "Pertinent remarks made by

a trial court in discussing the admissibility of evidence or explaining its rulings do not

constitute prohibited expressions of opinion." (Citations and punctuation omitted.)

*Boyd v. State*, 286 Ga. 166, 168 (3) (686 SE2d 109) (2009); see also *Bolden v. State*,

281 Ga. App. 258, 260 (2) (636 SE2d 29) (2006) (remarks of a judge assigning a

reason for a ruling do not constitute an expression of opinion or a comment on the

evidence). Accordingly, the trial court's instructions did not violate OCGA § 17-8-57,

and this argument presents no basis for reversal.

2. Graves also contends that his trial counsel was ineffective for withdrawing

a request to charge the jury on mere presence. We disagree.

> To establish an ineffective assistance claim, an appellant must show not only that his counsel's performance was deficient but also that the deficiency so prejudiced him as to create a reasonable probability that but for counsel's errors, the outcome of the trial would have been different. Failure to satisfy both requirements is fatal to an ineffectiveness claim.

(Footnotes omitted.) *Mitchell v. State*, 250 Ga. App. 292, 295-296 (2) (551 SE2d 404)

(2001). "[C]ounsel's decision as to which requests to charge to pursue in light of the

6

defense theory is a strategic one. As a general rule, matters of tactics and strategy, whether wise or unwise, [do] not amount to ineffective assistance of counsel." (Citations and punctuation omitted.) *Newton v. State*, 303 Ga. App. 852, 854 (2) (a) (695 SE2d 79) (2010).

Prior to trial, trial counsel had submitted a written request to charge on the law of mere presence. Graves testified at his trial, and he denied being present at the scene of the offense. During the charge conference, trial counsel withdrew his request to charge on mere presence. At the motion for new trial hearing, trial counsel testified that he withdrew the request because the defense changed during Graves's trial. Trial counsel explained that while Grave initially contended that he was not shooter, the defense changed when Graves testified that he was not present at the scene of the offense. Under these circumstances, we cannot agree that trial counsel's decision to withdraw the mere presence jury charge was unreasonable. See *Williams v. State*, 300 Ga. App. 839, 843 (2) (c) (686 SE2d 446) (2009). Moreover,

> the rule that mere presence at the scene of a crime is insufficient to convict is actually a corollary to the requirement that the State prove each element of the offense charged. Here, the trial court correctly instructed the jury on the duty of the State to prove each element of the crime beyond a reasonable doubt.

7

(Punctuation and footnote omitted.) Id.; see also *Torres v. State*, 298 Ga. App. 158, 158-159 (1) (679 SE2d 757) (2009) (no error in failing to charge jury on sole defense of "mere presence" where trial court instructed jury as to State's burden to prove each element of the offense). Consequently, Graves has failed to establish that any deficiency prejudiced his defense.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*